STATE v. PATRICK BAYNES.

157 N. W. (2d) 371.

March 15, 1968—No. 40,395.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender; for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *Alan M. Schlesinger,* Special Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction entered pursuant to a plea of guilty to an information charging defendant with the offense of conspiracy to rob contrary to Minn. St. 609.175, subd. 2.[1] It is contended that the plea of guilty should not have been accepted by the trial court for the reason that defendant did not understand the nature and elements of the offense with which he was charged and that his answers to questions put to him by the court at the time of arraignment and plea established that he in fact had a valid defense.

At the time of the commission of the offense with which he was charged, defendant was in custody of the state at Thistledew Youth Conservation Camp following his participation as a juvenile in the commission of several crimes. The information charged:

"* * * Patrick Baynes did then and there willfully, wrongfully, unlawfully, intentionally and feloniously * * * conspire, confederate and agree with one Ronald Leuthard, to rob one James Licke, who was then and there an agent of the Youth Conservation Commission placed in supervision over the defendant and Ronald Leuthard; and that in furtherance of said conspiracy the said Patrick Baynes did confederate, plan, conspire and agree that he would attract the attention and decoy the attention of the said James Licke, thereby allowing Ronald Leuthard to strike him insensible and that thereupon the two would rob the said James Licke of his car keys and automobile and effect their escape from the custody and supervision of the said

---

[1] Minn. St. 609.175, subd. 2, provides: "Whoever conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy may be sentenced as follows:

"(1) If the crime intended is a misdemeanor, by a sentence to imprisonment for not more than 90 days or to payment of a fine of not more than $100; or

"(2) If the crime intended is murder in the first degree or treason, to imprisonment for not more than 20 years; or

"(3) If the crime intended is any other felony or a gross misdemeanor, to imprisonment or to payment of a fine of not more than one half the imprisonment or fine provided for that felony or gross misdemeanor or both."

James Licke, agent for the Youth Conservation Commission; in that he did then and there deliberately and in conformity with such plan and conspiracy engage the said James Licke in conversation and attract his attention knowing full well and relying that the said Ronald Leuthard would strike the said James Licke insensible with a club or stick to effect such plan and conspiracy, which act was then done, contrary to * * * MSA 609.175."

After the plea of guilty was accepted, the court ordered a presentence investigation. Following this investigation, defendant received an indeterminate sentence of not to exceed 5 years.

The record reveals that while defendant was in custody of the Youth Conservation Commission at Camp Thistledew, he was employed as a member of a crew under the supervision of one James Licke. He was placed in this crew at his own request. The work consisted of clearing harmful vegetation from the forest floor by use of sticks. At some time during the day, defendant and another member of the crew, one Ronald Leuthard, formed a plan to attack Supervisor Licke, rob him of his keys, and escape in his automobile. Defendant was to divert Licke's attention by handing him a knife, whereupon Leuthard would attack him using a stick as a weapon. According to the plan, defendant approached Licke and handed him the knife. Leuthard, who had positioned himself to the rear of Licke, attacked him and knocked him to the ground, jumped upon him, and a struggle ensued. There was some reference to other members of the camp standing about watching the melee. Licke prevailed in the altercation, thus frustrating the plan to escape.

It appears that defendant, who was 17 years of age, had a long history of law violations, including 12 burglaries. Prior to his transfer to Camp Thistledew, he had been in custody of the state at the Lino Lakes center, where he acted as a decoy for an escapade similar to the one planned in this case.

In his examination before the trial court, defendant admitted having joined in the conspiracy to attack and rob the supervisor. Defendant argues, however, that he is entitled to the defense described in Minn.

St. 609.05, subd. 3, which provides that one who enters into a conspiracy and "thereafter abandons his purpose and makes a reasonable effort to prevent the commission of the crime prior to its commission is not liable if the crime is thereafter committed." The record before us suggests that there was a time prior to the actual attack when defendant had second thoughts on the advisability of going through with the plan and mentioned to his partner that he would prefer to escape by running off through the woods. According to his statement, the partner asked him "if I was chickening out" to which he responded in the affirmative. Nevertheless, he admitted that thereafter he did resume the plan to divert the attention of the supervisor by handing him a knife. He said, "After I handed him the knife I walked away and Leuthard raised the stick while I was walking away, but then he dropped it again, and when I was a few feet away then he hit him."

"Q. What did you do?
"A. I just—I didn't do anything."

He said that the other members of the crew who were standing about "all decided that I should pull Leuthard off because I was in on it, but then I went to—when we were walking back over there they started wrestling around. * * * I went to grab Leuthard's legs and I had a hold of it." The others told him to leave them alone and let them fight it out.

Upon questioning by the court, defendant testified that he knew he could be sentenced up to 5 years for the offense, that he was entitled to a jury trial wherein he would be accorded the presumption of innocence, and that he had had ample time to consult with counsel provided for him. He testified that no threats or promises had been made to induce him to enter his plea. The following examination of defendant in court by his counsel clearly establishes that he understood that withdrawal or abandonment might be a defense to the charge of conspiracy:

"Q. . [By counsel] Mr. Baynes, now you and I discussed the defenses in a charge of conspiracy of crime of this nature?

"A.   Yes.

"Q.   And I told you that according to Minnesota Statutes that a person who conspired with another to commit a crime and thereafter abandons his purpose and makes a reasonable effort to prevent the [perpetration] of the crime is not liable that the crime is thereafter committed. I told you about the statute, isn't that correct?

"A.   Yes.

"Q.   And even in view of that defense on your part you still want to plead guilty, is that correct?

"A.   Yes."

The authorities hold that, once formed, a conspiracy continues to exist until consummated, abandoned, or otherwise terminated by some affirmative act, and every overt act is, in contemplation of law, a renewal or continuance of the unlawful agreement. Where an overt act is required for conviction, a conspirator may avoid guilt by withdrawing from the conspiracy prior to the commission of an overt act. 16 Am. Jur. (2d) Conspiracy, § 29. See, State v. Currie, 267 Minn. 294, 126 N. W. (2d) 389.

It seems to us that defendant's plea of guilty here was entered intelligently and understandingly. The fact that he did not join in the actual attack on the supervisor is in no way inconsistent with his plea of guilty. According to his own testimony, he and Leuthard devised a plan to deliberately place Licke in a position where he would be beaten and robbed. His act of handing the knife to Licke was the signal for Leuthard to attack him, and after Licke's attention was distracted in this manner, the attack did in fact commence according to plan. Defendant joined in making the attack possible and shared in the furtherance of the criminal conspiracy with which he was charged.

It seems to us that the record fully establishes that defendant entered a plea of guilty voluntarily and intelligently with representation by competent counsel and with full knowledge of his rights. We accordingly hold that the trial court did not err in accepting the plea.

Affirmed.